# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CYNTHIA ANN REDUS-TARCHIS, FREDRIC and BONNIE OLIVER, and MICHAEL PATTI, | : : : : | Civil Action No. 14-7991 (WHW/CLW) |
| Plaintiffs, | : : | ***Filed Electronically*** |
| v. | : : | *ORAL ARGUMENT REQUESTED* |
| NEW YORK LIFE INVESTMENT MANAGEMENT LLC, | : : : | |
| Defendant. | : : | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Liza M. Walsh
Katelyn O'Reilly
CONNELL FOLEY LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, NJ 07102
 (973) 757-1100

Mary K. Dulka (admitted *pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

James O. Fleckner (admitted *pro hac vice*)
David Rosenberg (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

*Attorneys for Defendant New York Life Investment Management LLC*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

     I.     Plaintiffs Have Failed to Allege That the Funds' Total Investment Management Fees Are Disproportionate to the Total Services. ...........................................................................................2

     II.    This Court Need Not Resolve Any Factual Disputes About Services Provided to the Funds to Grant NYLIM's Motion. ................7

     III.   Plaintiffs Have Not Plausibly Alleged a Deficient Trustee Process. ..........................................................................................8

     IV.   Performance Is Not a *Gartenberg* Factor. ..........................................11

     V.    Plaintiffs' Allegations Regarding Economies of Scale Fail. ..............12

CONCLUSION .....................................................................................................15

ACTIVE/83903798.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
No. 04-4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006)...............................9, 13

*Am. Chem. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*,
No. 4:14-cv-0044, 2014 WL 5426908 (S.D. Iowa Sept. 10, 2014).....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007)..............................................................................................9

*In re BlackRock Mut. Fund Excessive Fee Litig.*,
Civ. A. No. 14-1165, 2015 WL 1418848 (D.N.J. Mar. 27, 2015) .......8, 9, 10, 15

*Curd v. SEI Invs. Mgmt. Corp.*,
No. 13-7219, 2015 WL 4243495 (E.D. Pa. July 14, 2015) ..........................13, 14

*Curran v. Principal Mgmt. Corp.*,
No. 4:09-cv-0433, 2010 WL 2889752 (S.D. Iowa June 8, 2010) ...................6, 9

*Dumond v. Mass. Fin. Servs. Co.*,
No. 04-11458, 2006 WL 149038 (D. Mass. Jan. 19, 2006) ................................6

*In re Federated Mut. Funds Excessive Fee Litig.*,
No. 2:04-cv-352, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009)................10, 13

*Fifth Third Bancorp v. Dudenhoeffer*,
134 S. Ct. 2459 (2014)........................................................................................3

*In re Franklin Mut. Funds Fee Litig.*,
478 F. Supp. 2d 677 (D.N.J. 2007).....................................................................12

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
573 F. Supp. 1293 (S.D.N.Y. 1983) ...................................................................11

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
694 F.2d 923 (2d Cir. 1982) .........................................................................11, 12

*Genesis Bio-Pharm., Inc. v. Chiron Corp.*,
27 F. App'x 94 (3d Cir. 2002) .............................................................................9

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
No. 2:14-cv-414, 2015 WL 965665 (S.D. Ohio Mar. 4, 2015) ...................10, 13

*Hunt v. Invesco Funds Grp., Inc.*,
No. 04-02555, 2006 WL 1581846 (S.D. Tex. June 5, 2006) ..............................6

*Jones v. Harris Assocs. L.P.*,
559 U.S. 335 (2010)...................................................................1, 2, 3, 6, 11, 14

*Jones v. Harris Assocs. L.P.*,
611 F. App'x 359 (7th Cir. 2015) ........................................................................3

*Kalish v. Franklin Advisers, Inc.*,
742 F. Supp. 1222 (S.D.N.Y 1990),
*aff'd*, 928 F.2d 590 (2d Cir. 1991)...................................................................14

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
Civ. A. No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012)............9, 10, 15

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
77 F. Supp. 2d 559 (D.N.J. 1999),
*aff'd*, 305 F.3d 140 (3d Cir. 2002)................................................................3, 10

*Migdal v. Rowe Price Fleming Int'l, Inc.*,
248 F.3d 321 (4th Cir. 2001) ............................................................................10

*In re Mut. Funds Inv. Litig.*,
590 F. Supp. 2d 741 (D. Md. 2008)......................................................................6

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) ..............................................................................4

*The R.W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value
Fund*,
425 F. App'x 25 (2d Cir. 2011) .......................................................................3, 6

*Reso v. Artisan Partners Ltd. P'ship*,
No. 11-CV-873, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) ................10, 13

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) .................................................................3

*Santiago v. Warminster Tp.*,
629 F.3d 121 (3d Cir. 2010) ...............................................................................8

*Santomenno v. Transamerica Life Ins. Co.*,
--- F. Supp. 3d ---, 2015 WL 5096388 (C.D. Cal. Aug. 28, 2015).......................3

*In re Scudder Mut. Funds Fee Litig.*,
No. 04-1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ............................13

*Sins v. Janus Capital Mgmt., LLC*,
No. 04-cv-1647, 2006 WL 3746130 (D. Colo. Dec. 15, 2006).........................13

*Strigliabotti v. Franklin Res., Inc.*,
No. C 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ..........................13

*Turner v. Davis Selected Advisers, LP*,
No. 08-421, slip op. (9th Cir. Sept. 29, 2015) ....................................................1

*Wicks v. Putnam Inv. Mgmt., LLC*,
No. 04-10988, 2005 WL 705360 (D. Mass. Mar. 28, 2005)................................6

*Zehrer v. Harbor Capital Advisors, Inc.*,
No. 14-cv-789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014)...........................14

## STATUTES & RULES

15 U.S.C. § 80a-35(b) (ICA § 36(b))...............................................................*passim*

15 U.S.C. § 80a-35(b)(3) (ICA § 36(b)(3)) ............................................................13

FED. R. CIV. P. 12(b)(6)........................................................................................2, 3

## OTHER AUTHORITIES

*Benak v. Alliance Capital Mgmt.*,
No. Civ. A. 01-5734, Consol. Am. Compl., D.E. 35 (D.N.J. Jan. 6,
2003) ...............................................................................................................11

*In re BlackRock Mut. Fund Excessive Fee Litig.*,
Civ. A. No. 14-1165, Consol. Compl., D.E. 27 (D.N.J. May 27, 2014) ............15

*In re BlackRock Mut. Fund Excessive Fee Litig.*,
   Civ. A. No. 14-1165, Reply in Supp. of Defs.' Mot. for J. on the Pleadings,
   D.E. 46 (D.N.J. Aug. 11, 2014) ..........................................................................8

*Curran v. Principal Mgmt. Corp.*,
   No. 4:09-cv-0433, Am. Compl., D.E. 17 (S.D. Iowa Jan. 15, 2010) ..................6

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
   No. 2:14-cv-414, Compl., D.E. 1 (S.D. Ohio May 5, 2014) .............................13

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
   Civ. A. No. 11-1083, Tr. of Mot. to Dismiss Hr'g, D.E. 33 (D.N.J. Sept. 23,
   2011) ...................................................................................................................7

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
   Civ. A. No. 11-1083, Second Am. Compl., D.E. 35 (D.N.J. Nov. 14, 2011) ....10

*Migdal v. Rowe Price Fleming Int'l, Inc.*,
   No. 98-2162 , Second Am. Compl., D.E. 22 (D. Md. Feb. 16,
   1999) ..................................................................................................................11

*In re Scudder Mut. Funds Fee Litig.*,
   No. 04-1921, Consol. Am. Class Action Compl., D.E. 15 (S.D.N.Y. Dec.
   20, 2005) ............................................................................................................11

In the Matter of Smith Barney Mgmt. LLC and Citigroup Global Markets,
   Inc., Exchange Act Release No. 51761, Investment Advisers Act
   Release No. 2390, 85 SEC Docket 1465 (May 31, 2005) ...................................6

Wells Fargo Bank, N.A., SEC No-Action Letter,
   1998 WL 146223 (Mar. 31, 1998).......................................................................5

*Zehrer v. Harbor Capital Advisors, Inc.*,
   No. 14-cv-789, Verified Compl., D.E. 1 (N.D. Ill. Feb. 4, 2014) .....................14

## INTRODUCTION

The main and fatal flaw of the Complaint[1] is that it fails to adequately allege that the ***overall fees*** paid by the Funds are excessive.  Notably, although Plaintiffs concede that Section 36(b) allows a challenge only to the total fees as compared to the total services received by the Funds, they still challenge only the ***portion*** of the fee retained by NYLIM and seek to have the Court overturn the Trustees' business judgment.  Plaintiffs must do more than that to rebut the "considerable weight" that must be applied to fee arrangements approved by disinterested trustees like those here.[2]  In fact, the Ninth Circuit recently affirmed dismissal of a Section 36(b) claim, given the deference that is due to independent trustee judgment.[3]

To prevail on this motion, Plaintiffs must allege facts that plausibly suggest, if true, that the Funds' award-winning Trustees[4] approved total management fees that are so disproportionately large that they bear no reasonable relationship to the value of the services provided to each of the Funds and could not have been the product of arms-length bargaining.  Yet Plaintiffs only list the amount of the total fees.  They do not indicate how these amounts compare to the fees charged to

---

[1] Terms used herein have the meaning set forth in the Moving Brief ("Mov. Br.").

[2] *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 351 (2010).

[3] Oct. 2, 2015 Declaration of David Rosenberg ("Rosenberg Decl.") Ex. A, *Turner v. Davis Selected Advisers, LP*, No. 08-421, slip op. at 4 (9th Cir. Sept. 29, 2015).

[4] One Trustee won the Trustee of the Year award, and a second was nominated for it in a different year.  Mov. Br. at 6-7.

ACTIVE/83903798.1

similar funds by other advisors, and they ignore the public record that shows that the Trustees determined that the total fees are competitive to fees charged by other advisors.[5]  Their failure to plausibly allege that the total fees are disproportionately large is fatal to their Complaint.

Plaintiffs' other arguments also fail.  Rule 12(b)(6) does not allow Plaintiffs to invent a fact dispute where their conclusory allegations are contradicted by the public record and the very agreements relied on in the Complaint.  And the only actual facts (as opposed to conclusions) that Plaintiffs plead regarding NYLIM's use of the Subadvisors and the Funds' performance and breakpoints do not state a Section 36(b) claim.  Accordingly, the Complaint should be dismissed.

## ARGUMENT

### I.    Plaintiffs Have Failed to Allege That the Funds' Total Investment Management Fees Are Disproportionate to the Total Services.

Plaintiffs do not plead, as they must, that the Funds' total management fees are so disproportionately large relative to the total services the Funds received that they could not have been the result of arms-length bargaining.[6]

Plaintiffs concede that they must challenge the total fees paid for the total services.  Opposition ("Opp.") at 24.  They argue that they have done so because the Complaint identifies the total fees paid (*id.*, citing SAC ¶¶ 37, 53), and parrots

---

[5] Mov. Br. at 11.

[6] *Jones*, 559 U.S. at 346.

2

the *Jones* standard. *Id.* (citing SAC ¶¶ 145, 153, 161, 169). But coupling the amount of fees with boilerplate recitations is not enough under Fed. R. Civ. P. 12(b)(6). Plaintiffs do not allege that the total fees are disproportionate to the total services,[7] nor do they assert that the Funds have paid higher fees than "other similar funds have paid."[8]

Plaintiffs also try to dress up their actual challenge to a portion of the fees as a challenge to the total, arguing that although they have pleaded the allegedly "excessive portion" of the total fee, they are really challenging the total fees (even though the Complaint does not ever say so). Opp. at 24.[9] There is no basis in the

---

[7] Despite Plaintiffs' mischaracterizations (Opp. at 24), the boilerplate allegations they identify say nothing about the total fees. Nor do those allegations negate the cases that hold that a Section 36(b) claim must challenge the total fee. *See id.* at 25; Mov. Br. at 18-19. While Plaintiffs generally suggest that the Court should afford them latitude because Section 36(b) claims "must be assessed with an eye towards shareholder protection" (Opp. at 9), Rule 12(b)(6) does not authorize unfounded claims to proceed to costly, asymmetrical discovery. Instead, the rule requires courts to weed out "meritless, economically burdensome lawsuits." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470-71 (2014).

Moreover, although Plaintiffs suggest that *In re Salomon Smith Barney Mutual Fund Fees Litigation*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006), was later reversed, in fact, the dismissal of the claims challenging the investment management fees was affirmed. *The R.W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund*, 425 F. App'x 25, 30 (2d Cir. 2011) ("*R.W. Grand Lodge*").

[8] *Jones v. Harris Assocs. L.P.*, 611 F. App'x 359, 361-62 (7th Cir. 2015) (affirming summary judgment on remand); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 565 (D.N.J. 1999) (noting the relevance of "the fees charged by other advisers" to a claim under Section 36(b)), *aff'd*, 305 F.3d 140 (3d Cir. 2002).

[9] Arguments such as this, that focus on fee components "separately, rather than as a total package," are, at best, "unconvincing." *Santomenno v. Transamerica Life Ins.*

3

Complaint for this circular, post-hoc rationalization; instead, even Plaintiffs'

Opposition repeatedly and explicitly challenges only the portion of the fee retained

by NYLIM. *Id.* at 1 ("[T]hese fees [retained by NYLIM] are disproportionately

large to the services provided only by Defendant[.]").[10]   And in response to

NYLIM's argument that the Marketfield Fund's total management fees have

***decreased*** while the total services provided to it have ***increased*** under NYLIM's

management (Mov. Br. at 21-22),[11] Plaintiffs again point to the delegation of some

duties to the Subadvisor as to why the Court should avoid looking at the decrease

in total fees. *See* Opp. at 16.[12]

The High Yield Opportunities Fund and Corporate Bond Fund exemplify

why Congress sensibly created liability only upon a comparison of the total fees to

the total services.  Those Funds are subadvised by a wholly-owned NYLIM

affiliate, MacKay.[13]  If NYLIM were to eliminate the corporate distinction and

---

*Co.*, --- F. Supp. 3d ----, 2015 WL 5096388, at *13 (C.D. Cal. Aug. 28, 2015).

[10] *See also id.* at 4, 6, 14-16, 26-27 (additional challenges to only the portion of the fee retained by NYLIM).

[11] Despite Plaintiffs' argument to the contrary, the Court may consider and rely upon materials filed with the SEC, such as the prior fund's public filings. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

[12] Plaintiffs also argue that the fees charged prior to NYLIM's service as investment manager "may not [have] be[en] the product of [arm's length] negotiations." *Id.*  Regardless, the fact remains that, to state a claim, Plaintiffs must challenge the total fee and not only the portion retained by NYLIM.

[13] Dulka Decl. Ex. P, CBF 2014 Semi-Annual Rpt. at 45; Dulka Decl. Ex. Q, HYOF Semi-Annual Rpt. at 42.

ACTIVE/83903798.1

directly provide all advisory services using the same personnel and processes now employed by MacKay, there would be no separate subadvisor and therefore no basis for Plaintiffs' challenge to the alleged (and mischaracterized) "mark-up." *See* Mov. Br. at 12-13.  Claims for hundreds of millions of dollars, such as the ones brought here, cannot depend on something as arbitrary as whether the advisor sub-contracts with an affiliate or folds the affiliate into itself and directly performs all the advisory services.[14]  In fact, the Trustees publicly disclosed to investors that, because of the relationship between NYLIM and MacKay, they "considered cost and profitability information for [NYLIM] and MacKay Shields in the aggregate." HYOF Semi-Annual Rpt. at 43.  By focusing, as Plaintiffs do, on the division of fees between NYLIM and its Subadvisors instead of the Funds' total fees as compared to fees paid by similar funds, Plaintiffs ignore both the law and reality.[15]

Notwithstanding their admission that the relevant standard requires the Court to review the total fees, and in an apparent attempt to salvage their claims, Plaintiffs argue that courts have allowed challenges to only a portion of the total fees.  Opp. at 24-25.  But their cases are distinguishable.  Two involved allegedly improper conduct, including a challenge to a portion of the fee paid after the

---

[14] As an indication of the arbitrariness of these corporate distinctions as they relate to fund fees, the SEC has determined that advisors need not obtain shareholder approval when spinning off their affiliates to act as subadvisors.  Wells Fargo Bank, N.A., SEC No-Action Letter, 1998 WL 146223 (Mar. 31, 1998).

[15] Accordingly, at a minimum, the claims as to the High Yield Opportunities Fund and Corporate Bond Fund (SAC Counts III and IV) fail as a matter of law.

5

defendant failed to disclose relevant information to the independent trustees.[16]

Others involved allegations that fees labeled for one purpose had actually been for

a different use, or that the defendant improperly double-dipped by using a portion

of a second fee for the same services for which it was already paid.[17]  No such

allegations are asserted here, and Plaintiffs do not even suggest that any of their

other cases allowed a Section 36(b) claim as against only a portion of the total fee

to proceed.[18]

---

[16] In *In re Mutual Funds Investment Litigation*, 590 F. Supp. 2d 741 (D. Md. 2008), plaintiffs challenged a portion of the total fees "based upon the existence of market timing agreements or of insider market-timed trades not disclosed when the fees were negotiated."  *Id.* at 760.  And *R.W. Grand Lodge* was decided after the SEC imposed sanctions of $208 million for the same challenged conduct, which included distributing "materially misleading" documents to the trustees regarding the defendants' compensation and the services they were to perform.  In the Matter of Smith Barney Mgmt. LLC and Citigroup Global Markets, Inc. ¶¶ 49-63 & Section IV, Exchange Act Release No. 51761, Investment Advisers Act Release No. 2390, 85 SEC Docket 1465 (May 31, 2005).  There are no such allegations here, nor can there be where the Trustees reviewed both the Management and Subadvisory Agreements.  *See* Mov. Br. at 10-11.

[17] *See Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-0433, 2010 WL 2889752, at *11 (S.D. Iowa June 8, 2010); Rosenberg Decl. Ex. A, *Curran*, Am. Compl. ¶¶ 55-56, D.E. 17 (Jan. 15, 2010) (alleging that a portion of the distribution fees served as "additional compensation for . . . retail advisory services"); *Am. Chem. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, No. 4:14-cv-0044, 2014 WL 5426908, at *1, 5 (S.D. Iowa Sept. 10, 2014) (alleging that defendant retained a portion of a second advisory fee even though it was fully compensated through an investment management fee).

[18] For example, Plaintiffs cite to three cases (Opp. at 11) that were decided before *Jones* that Plaintiffs do not assert are relevant beyond the mere fact that they denied motions to dismiss.  *See Hunt v. Invesco Funds Grp., Inc.*, No. 04-02555, 2006 WL 1581846 (S.D. Tex. June 5, 2006); *Dumond v. Mass. Fin. Servs. Co.*, No. 04-11458, 2006 WL 149038 (D. Mass. Jan. 19, 2006); *Wicks v. Putnam Inv.*

## II.    This Court Need Not Resolve Any Factual Disputes About Services Provided to the Funds to Grant NYLIM's Motion.

Plaintiffs admit that the Management Agreements and Subadvisory Agreements repose in NYLIM "supervisory and oversight responsibilities." Opp. at 14-15. Indeed, both the Subadvisory and Management Agreements make clear that NYLIM is ultimately responsible for *all services* listed in the Management Agreements. Mov. Br. at 23-24. Given that the governing law requires evaluation of the total fees for the total services, the Court should dismiss the Complaint given that (1) NYLIM remains responsible for all services and (2) there is no well-pleaded challenge to the total fees paid to NYLIM. The Court should reject Plaintiffs' assertion that they are entitled to expensive and irrelevant discovery to parse out which entity performs which specific tasks under NYLIM's oversight. *See* Opp. at 15. Plaintiffs' pleading deficiencies warrant dismissal without the need to resolve any factual disputes over which services were delegated.[19]

---

*Mgmt., LLC*, No. 04-10988, 2005 WL 705360 (D. Mass. Mar. 28, 2005).

[19] In any event, Plaintiffs' description of the services performed by NYLIM (Opp. at 14) continues to leave out critical supervisory responsibilities retained by NYLIM, such as responsibility (i) over all Fund management decisions, (ii) to evaluate the Subadvisors' performance, and (iii) to make necessary recommendations and reports to the Trustees. *See* Mov. Br. at 23-24. Plaintiffs' assertion that NYLIM supposedly delegated away all but supervisory duties is also contradicted by their own Complaint, which lists several other duties that NYLIM had under the Management Agreements and fails to allege that these duties have been delegated. *Id.* at 25. Even if the Court declines to dismiss the Complaint with prejudice, at the very least the Court should dismiss it without prejudice and require Plaintiffs to accurately plead the content of the agreements. *See Kasilag v.*

7

Further, Plaintiffs incorrectly contend that *In re BlackRock Mutual Fund Excessive Fee Litigation*, Civ. A. No. 14-1165, 2015 WL 1418848 (D.N.J. Mar. 27, 2015) ("*BlackRock*"), "rejected a similar argument." Opp. at 15. The *BlackRock* defendant's argument was construed as "merit-based," designed to "rebut[]" plaintiffs' allegations that the defendant performed similar or lesser services as an advisor to their funds than it did as a subadvisor to other funds.[20] By contrast, NYLIM does not attempt to prove at this stage of the case which services it performs, nor to compare them to services NYLIM performed for other funds. Such proof is unnecessary given the statutory focus on the total fee for total services and NYLIM's ultimate responsibility for all services provided to the Funds.

## III.    Plaintiffs Have Not Plausibly Alleged a Deficient Trustee Process.

Plaintiffs allege only in conclusory fashion that the Trustees' process for approving the investment management fees was deficient.  *See* SAC ¶¶ 125-32. But Plaintiffs cannot create a fact dispute by arguing that their conclusions contradict the public record:  allegations that "are no more than conclusions," "are not entitled to the assumption of truth" and should be disregarded.  *Santiago v.*

---

*Hartford Inv. Fin. Servs., LLC*, Civ. A. No. 11-1083, Tr. of Mot. to Dismiss Hr'g at 69:25-70:20, D.E. 33 (D.N.J. Sept. 23, 2011) (granting motion to dismiss without prejudice for plaintiffs to allege with more detail what duties the defendant retained).

[20] *See id.* at *5 & n.5; *BlackRock*, Reply in Supp. of Defs.' Mot. for J. on the Pleadings at 3-5, D.E. 46 (Aug. 11, 2014).

ACTIVE/83903798.1

*Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks omitted).[21]  The public records show that the Trustees devoted considerable time and relied upon data from independent third-parties when deliberating over the Management Agreements and Subadvisory Agreements.  Mov. Br. at 28-31.[22]

Plaintiffs' cases from this District (Opp. at 27) are again distinguishable.  In *BlackRock*, plaintiffs alleged that the defendant charged different fees for allegedly similar services.  2015 WL 1418848, at *7.  The court found that the plaintiffs had sufficiently pled that the trustees were not independent or conscientious where they had failed to consider this fee difference or to negotiate a "most favored nation" provision that would have required the defendant to charge the same fees to their funds.  *Id.*  Similarly, in *Kasilag*, 2012 WL 6568409 (D.N.J. Dec. 17, 2012), the plaintiffs also alleged that the defendant charged higher fees to the funds at issue than it had to others for the same work.  *Id.* at *5.  Moreover, the defendant allegedly retained a portion of the fee up to 576% larger than the amount paid to

---

[21] *See Genesis Bio-Pharm., Inc. v. Chiron Corp.*, 27 F. App'x 94, 99-100 (3d Cir. 2002) (affirming dismissal where cited documents contradicted the allegations); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-4885, 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006) ("*AllianceBernstein*") (granting motion to dismiss Section 36(b) claim where the allegations were contradicted by public records that "paint a more complete picture . . . of the [f]und in question").

[22] Plaintiffs cite *Curran* (Opp. at 29), but there the defendant asked the court to "credit the presumption" in public records that "these directors are doing their jobs."  2010 WL 2889752, at *9.  Here, by contrast, NYLIM argues the unremarkable proposition that Plaintiffs' conclusory allegations cannot be credited under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).  Mov. Br. at 16-17.

ACTIVE/83903798.1

the subadvisor,[23] a purported "mark-up" over five times larger than those alleged here.  SAC ¶ 53.[24]  Here, by contrast, Plaintiffs have not and cannot make these allegations, as (i) the public record shows that the subadvisory fee structures that Plaintiffs challenge were fully known to the Trustees and explicitly considered by them and (ii) there are no allegations that NYLIM performed similar services at different price points for analogous funds.  *See* Mov. Br. at 10-12, 28-32.[25]

Accordingly, neither *BlackRock* nor *Kasilag* are persuasive, particularly where, as here, the public records contradict Plaintiffs' conclusory allegations. Because Plaintiffs have failed to plausibly allege a deficient Trustee process, their claims should be dismissed.[26]

---

[23] *Kasilag*, Second Am. Compl. ¶ 46, D.E. 35 (Nov. 14, 2011).

[24] Even with these additional allegations and others, the *BlackRock* and *Kasilag* courts cautioned that their rulings were not to say that the plaintiffs could satisfy the "onerous standard for liability under 36(b)."  *Blackrock*, 2015 WL 1418848, at *8; *Kasilag*, 2012 WL 6568409, at *7.

[25] Plaintiffs' cases from outside this District are also inapposite due to comparisons not pleaded here.  *See Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, No. 2:14-cv-414, 2015 WL 965665, at *5 (S.D. Ohio Mar. 4, 2015) ("Plaintiffs have pled a notable disparity in the fees obtained for servicing the three funds with which they are involved and the [fees defendant charged elsewhere], while concurrently pleading that the services provided to and resources involved in all of the funds are substantially the same."); *In re Federated Mut. Funds Excessive Fee Litig.*, No. 2:04-cv-352, 2009 WL 5821045, at *6 (W.D. Pa. Sept. 30, 2009) (same); *Reso v. Artisan Partners Ltd. P'ship*, No. 11-CV-873, 2011 WL 5826034, at *2-3 (E.D. Wis. Nov. 18, 2011) (same, funds at issue and other funds managed by defendant).

[26] Plaintiffs' efforts to distinguish NYLIM's cases fare no better.  For example, despite Plaintiffs' assertions (Opp. at 28), both *Migdal v. Rowe Price Fleming International, Inc.*, 248 F.3d 321 (4th Cir. 2001), and *Krantz*, 77 F. Supp. 2d 559,

10

## IV.    Performance Is Not a *Gartenberg* Factor.

Plaintiffs argue that the "underperformance of the Funds" is one of the

*Gartenberg* factors to be addressed by the Court in its Section 36(b) analysis.  Opp.

at 22-23.  They are wrong.  Neither the Second Circuit, when deciding *Gartenberg*

*v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 929-32 (2d Cir. 1982), nor

the Supreme Court, when it adopted the *Gartenberg* factors in *Jones*, 559 U.S. at

344 & n.5, included performance as a factor.  Nevertheless, Plaintiffs ask the Court

to ignore those authorities and look instead to the New York district court decision,

*Gartenberg v. Merrill Lynch Asset Management, Inc.*, 573 F. Supp. 1293

(S.D.N.Y. 1983).

Plaintiffs' suggested approach should be rejected; not only does it disregard

---

provide guidance as to whether Plaintiffs have failed to plausibly allege a deficient board process.  *See* Mov. Br. at 27-30.  In any event, the plaintiffs in *Migdal* did not allege that procedural issues "alone" could state a claim, as Plaintiffs suggest (Opp. at 28); rather, the complaint in that case alleges explicitly, like the Complaint here, that the fees "are so disproportionately large that they bear no reasonable relation to the services rendered."  *Compare* Rosenberg Decl. Ex. B, *Migdal*, No. 98-2162, Second Am. Compl. ¶¶ 2, 28-31, D.E. 22 (D. Md. Feb. 16, 1999) *with* SAC ¶¶ 145, 153, 161, 169 (almost verbatim allegations).  And NYLIM's cited authority did in fact dismiss challenges to whether fees were excessive in relation to the services provided, contrary to Plaintiffs' mischaracterizations (*e.g.*, Opp. at 16 n.13, 25 n.19).  *See, e.g.*, *In re Scudder Mut. Funds Fee Litig.*, No. 04-1921, Consol. Am. Class Action Compl. ¶¶ 24-39, D.E. 15 (S.D.N.Y. Dec. 20, 2005) (alleging that the "fees were excessive in relation to the quality and nature of the services being provided"); *Benak v. Alliance Capital Mgmt.*, No. 01-5734, Consol. Am. Compl. ¶ 26, D.E. 35 (D.N.J. Jan. 6, 2003) (alleging that the advisor "failed to provide the . . . services for which the [fund] paid").

binding Supreme Court precedent, but it also ignores the practical, and persuasive, reasons why performance is not, and should not be, considered when analyzing claims under Section 36(b).  As this Court observed, unlike *Gartenberg*'s focus on total fees and total services rendered, performance is "cyclical[; a]n underachieving fund one year may be an overachieving fund the next."  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687-88 (D.N.J. 2007) ("*Franklin*") (internal quotations and citations omitted).[27]  For example, Plaintiffs allege that the Large Cap Fund underperformed over "the most recent 1- and 5-year periods as of the end of fiscal year 2014," SAC ¶ 122, but had admitted that the Fund ***outperformed*** over the three-year period.  Mov. Br. at 33 & n.64.  Alternating over and under-performance is not a reason to find a fund's fee so disproportionately large that it bears no reasonable relationship to the services rendered.

Whether standing alone or in conjunction with other allegations, Plaintiffs' allegations regarding the Funds' performance do not salvage their claims, and the Complaint should be dismissed.

## V.     Plaintiffs' Allegations Regarding Economies of Scale Fail.

Plaintiffs' Opposition only serves to highlight their pleading deficiencies regarding economies of scale.

---

[27] Plaintiffs claim that the Section 36(b) discussion in *Franklin* is "*dicta*."  Opp. at 23 n.17.  Not so.  Although *Franklin* did hold that claims were preempted, it held alternatively that it was also "dismiss[ing]" plaintiffs' Section 36(b) claim for failure to state a claim.  478 F. Supp. 2d at 688.

ACTIVE/83903798.1

*First*, Plaintiffs argue that the Court can look to asset levels outside of the one-year period proscribed by Section 36(b)(3).  Opp. at 21.  They are wrong. Asset growth "outside the bounds of the statute of limitations" is irrelevant to whether an advisor realized economies of scale during the applicable one-year period.[28]  In nearly all of the cases that Plaintiffs contend "looked to the [asset] growth" beyond the relevant one-year period, the funds' asset levels had continued to increase into that one-year period.[29]  Only one case involved declining assets, but that case is inapposite because there, unlike here, the funds had no breakpoints, even though the same advisor allegedly used breakpoints on analogous funds.[30]

*Second*, Plaintiffs acknowledge that NYLIM and the Trustees agreed to multiple breakpoints for each Fund.  Opp. at 17-19.  They do not contest that these

---

[28] *In re Scudder Mut. Funds Fee Litig.*, 2007 WL 2325862, at *16 (Aug. 14, 2007) (rejecting economies of scale arguments where asset levels decreased during the relevant one-year period even though they had risen over the prior fifteen years).

Plaintiffs contend incorrectly that *AllianceBernstein*, 2006 WL 1520222, was "dismissed for reasons not present here."  Opp. at 22 n.16.  However, one reason for the court's dismissal was a finding that the plaintiffs had improperly relied on fee trends outside of the relevant one-year period, just as Plaintiffs do here. *AllianceBernstein*, 2006 WL 1520222, at *3; *see* Mov. Br. at 37.

[29] *See* Opp. at 21-22 (citing *Curd v. SEI Invs. Mgmt. Corp.*, No. 13-7219, 2015 WL 4243495, at *5 (E.D. Pa. July 14, 2015); *Reso*, 2011 WL 5826034, at *2; *In re Federated Mut. Funds Excessive Fee Litig.*, 2009 WL 5821045, at *7; *Sins v. Janus Capital Mgmt., LLC*, No. 04-cv-1647, 2006 WL 3746130, at *3 (D. Colo. Dec. 15, 2006); *Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883, 2005 WL 645529, at *3-4 (N.D. Cal. Mar. 7, 2005)).

[30] *See* Opp. at 21 (citing *Goodman*, 2015 WL 965665, at *3-4); *see also* Rosenberg Decl. Ex. C, *Goodman*, Compl. ¶¶ 80-85, 100-101, D.E. 1 (May 5, 2014).

13

breakpoints allow the Marketfield Fund to pay a lower effective management fee rate than it did before NYLIM became its advisor.  *See* Mov. Br. at 39.  Nor do they dispute that NYLIM's breakpoints for the Large Cap Fund allow that Fund to pay lower total management fees even when the Fund's Subadvisor has negotiated for reverse breakpoints that cause its fee to increase as assets rise.  *See id.* at 39-40.[31]  Instead, Plaintiffs argue merely that the breakpoints were set at the wrong levels.  *See* Opp. at 17-19.[32]

That is not enough to state a claim.  The Court must consider "whether the fund has permitted shareholders to participate, at least in part, in the economies of scale it has realized."  *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1239

---

[31] That breakpoints were established for the Funds distinguishes this case from *Curd*, which Plaintiffs cite in their Opposition (*see, e.g.*, Opp. at 10).  There, the funds at issue had no breakpoints.  2015 WL 4243495, at *5.

*Zehrer v. Harbor Capital Advisors, Inc.*, No. 14-cv-789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014), is also distinguishable.  There, the plaintiff alleged that the fund had already surpassed its final breakpoint at initiation, almost eight years prior to the filing of the complaint, and that new breakpoints had not been added despite the fund's asset level nearly tripling since then.  Rosenberg Decl. Ex. D, *Zehrer*, Verified Compl. ¶¶ 24, D.E. 1 (Feb. 4, 2014).  Even for the two Funds Plaintiffs claim have surpassed their final breakpoint here, Plaintiffs have not made such dramatic allegations.  *See* SAC ¶¶ 99-102.

[32] For example, Plaintiffs suggest that, even though the Large Cap Fund, Corporate Bond Fund, and Marketfield Fund have benefited from breakpoints, the breakpoints were set at levels that did not counteract the increased management fees paid to NYLIM as assets grew outside of the Relevant One-Year Period.  Opp. at 18-19 (comparing increased management fees to reductions resulting from breakpoints).  Plaintiffs cannot ask the Court to substitute its judgment for that of the independent trustees.  *Cf. Jones* 559 U.S. at 352-53 ("courts are not well suited to make" "precise [fee] calculations").

(S.D.N.Y 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991).  Where the public record

contradicts Plaintiffs' economies of scale arguments and demonstrates instead that

the Trustees have ensured that the Funds benefit from potential economies of scale,

Plaintiffs have not, and cannot, meet their pleading burden.

Again, Plaintiffs' cases do not change the result.  Plaintiffs rely heavily on

*BlackRock* in contending that their allegations are sufficient (Opp. at 19-21), but

the *BlackRock* plaintiffs made markedly different economies of scale allegations,

such as claiming that similar funds subadvised by the defendant benefited from

breakpoints at lower asset levels and obtained greater fee reductions than did their

funds.  *BlackRock*, Consol. Compl. ¶¶ 112-20, D.E. 27 (May 27, 2014).[33]

Plaintiffs have not made such a comparison here, nor could they.  Their economies

of scale arguments add nothing to the deficiently pleaded Complaint.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in NYLIM's Moving

Brief, NYLIM respectfully requests that this Court dismiss the Complaint.

---

[33] *Kasilag*, upon which Plaintiffs similarly rely (Opp. at 20), also concerned
allegations not made here.  There, the management fee breakpoints had begun at
much higher asset levels than did the subadvisory fee breakpoints, allowing the
defendant to retain more of the benefits of any economies of scale.  2012 WL
6568409, at *6.  By contrast, here the management fee breakpoints for three of the
Funds begin at the same asset levels as the subadvisory fee breakpoints and, for the
one exception (the Large Cap Fund), the management fee breakpoints provide
greater fee relief than do the subadvisory fee breakpoints.  SAC ¶¶ 36, 45.

ACTIVE/83903798.1

Dated:  October 2, 2015

Respectfully submitted,


s/ Liza M. Walsh
Liza M. Walsh
Katelyn O'Reilly
CONNELL FOLEY, LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, NJ 07102
Tel.: (973) 757-1100

OF COUNSEL:

James O. Fleckner (admitted *pro hac vice*)
David Rosenberg (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel.: (617) 570-1000

Mary K. Dulka (admitted *pro hac vice*)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800

*Attorneys for Defendant New York Life
Investment Management LLC*

16